Justin M. Hosman (#15634)
Erika M. Larsen (#16494)
Alyssa J. Wood (#16613)
**STEELE ADAMS HOSMAN**
6713 South 1300 East
Cottonwood Heights, Utah 84121
(801) 816-3999
justin@sahlegal.com
erika@sahlegal.com
alyssa@sahlegal.com

Spencer Phillips (#14401)
Employer-Lawyer, PLLC
3450 N. Triumph Blvd., Suite 102
Lehi, Utah 84043
(801) 874-4964
spencer@employer-lawyer.com

*Attorneys for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| ISABEL FONSECA; <br><br> Plaintiff, <br><br> v. <br><br> PROVO CITY; and DOES 1-10, inclusive; <br><br> Defendants. | **COMPLAINT AND JURY DEMAND** <br><br> Case No. <br> Judge: |

---

COMES NOW Plaintiff Isabel Fonseca ("Plaintiff" or "Ms. Fonseca"), by and through counsel of record, and complains, alleges, and argues against Defendants as follows:

### PARTIES, JURISDICTION AND VENUE

1.       At all relevant times herein, Plaintiff Isabel Fonseca ("Ms. Fonseca") was a resident of Utah County, State of Utah.

2.      Upon information and belief, Defendant Provo City ("the City") is a political subdivision of the State of Utah.

3.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Title VII of the Civil Rights Act of 1964 because this action arises under the Constitution and the laws of the United States. This Court has supplemental subject matter jurisdiction for all other claims pursuant to 28 U.S.C. § 1367 because all related claims are so related to claims arising under 29 U.S.C. § 1331 that they form part of the same case or controversy under Article III of the United States Constitution.

4.      Venue is proper in the District of Utah pursuant to 28 U.S.C. § 1391(b) and (c) because the acts giving rise to the claims of Plaintiffs and the Collective Members occurred within the District of Utah, and Defendants regularly conduct business in and have engaged in the conduct alleged in the Complaint—and thus are subject to personal jurisdiction in—the District of Utah.

5.      This case falls outside of the Governmental Immunity Act of Utah ("GIAU"), Utah Code § 63G-7-101 *et seq.*

6.      Defendants' actions as described herein do not constitute actions consistent with a governmental function, and instead are consistent with that of a private employer.

7.      Notwithstanding, any and all jurisdictional prerequisites pursuant to the GIAU have been fully satisfied and this Court has jurisdiction to hear these claims.

8.      On or about February 5, 2021, Plaintiff served a Notice of Claim on Defendants, pursuant to Utah Code § 63G-7-401.

9.      Said Notice of Claim was served upon the agent of service identified in Utah Code § 63G-7-401(3)(b)(ii) and Rule 4(d)(1) of the Utah Rules of Civil Procedure, namely Amanda Ercanbrack, City Recorder for the City.

10.      Defendants failed to accept Plaintiff's claim within sixty (60) days of service of the Notice of Claim.

11.      Pursuant to Utah Code § 63G-7-403(2), the Plaintiff as of the date of the filing of this Complaint and Jury Demand, have filed and begun the action as against the above-named Defendants within one year of the date following the expiration of the statutory 60-day time period, and these claims are timely.

12.      The Plaintiff has met all of the statutory requirements of the Governmental Immunity Act of Utah, Utah Code §§ 63G-7-101, *et seq*.

## GENERAL ALLEGATIONS

13.      Plaintiff realleges and incorporates by reference all previous allegations of this Complaint as if set forth explicitly herein.

14.      In or about July 2020, Ms. Fonseca was an employee of the City.

15.      Ms. Fonseca was employed as a lifeguard at a City pool located at the City's Recreation Center (the "Rec Center").

16.      While on shift, lifeguards on duty are assigned to lifeguard stations, and the lifeguards rotate through these stations every twenty (20) minutes throughout their shifts.

17.      On or about July 16, 2020, Ms. Fonseca was on-duty as a lifeguard under the direction and control of Aquatic Supervisors Cathy Smits and Karina Eckern.

18.      Ms. Fonseca was sitting at her assigned station performing her lifeguard duty when she noticed a pool patron ("Perpetrator") staring at her.

19.     This immediately made Ms. Fonseca feel uncomfortable and unsafe.

20.     After noticing the Perpetrator, Ms. Fonseca immediately looked away and continued scanning the pool and observing other patrons as part of her lifeguard duties.

21.     Every time Ms. Fonseca scanned the area of the pool where this Perpetrator was swimming, she noticed that he continued to stare at her.

22.     Several times, the Perpetrator tried to engage Ms. Fonseca in conversation, but Ms. Fonseca politely declined and stayed focused on her lifeguarding duties.

23.     After multiple attempts from the Perpetrator to elicit a response from Ms. Fonseca, she finally replied that she was "tired" and wanted to go home, hoping such a disinterested response might quell his uncomfortable interest.

24.     Nonetheless, the Perpetrator continued to stare at her throughout the evening.

25.     During the next designated station rotation, Ms. Fonseca's co-worker Ashley Sorenson approached Ms. Fonseca's station to take over the station.

26.     Because of Ms. Fonseca's discomfort over the Perpetrator's uninvited gaze, she informed Ms. Sorenson about the Perpetrator.

27.     Ms. Fonseca told Ms. Sorenson that the Perpetrator was staring at her constantly and making her feel uncomfortable.

28.     Ms. Fonseca asked Ms. Sorenson to let her know if the Perpetrator made her feel uncomfortable as well, and if so, they would report the Perpetrator to their supervisor.

29.     When the next rotation arrived, Ms. Sorenson and Ms. Fonseca met at "the river" in the pool enclosure to discuss the Perpetrator's actions while Ms. Sorenson was assigned to that station.

30.   Ms. Sorenson reported to Ms. Fonseca that the Perpetrator relentlessly asked Ms. Sorenson private questions about Ms. Fonseca.

31.   Specifically, the Perpetrator asked Ms. Sorenson about, among other things, Ms. Fonseca's name, age, school, and work schedule.

32.   Ms. Fonseca then walked to her next assigned station, and immediately blew her whistle twice, which is a known signal to the supervisor on duty that a lifeguard needs the supervisor's attention.

33.   In response, Ms. Fonseca's supervisor on duty, Celyse Roney, approached Ms. Fonseca.

34.   Ms. Fonseca reported the Perpetrator's actions and comments to Ms. Roney.

35.   Ms. Roney responded that she did not know what to do, and asked Ms. Fonseca what she wanted Ms. Roney to do about it.

36.   Ms. Roney then walked away, leaving Ms. Fonseca alone and unprotected from the Perpetrator.

37.   As soon as Ms. Roney walked away, the Perpetrator attempted to bait Ms. Fonseca into the pool by feigning that he was "drowning" while staring directly at Ms. Fonseca.

38.   Ms. Fonseca ignored this "bait," the Perpetrator emerged from the pool and walked directly toward Ms. Fonseca.

39.   The Perpetrator told Ms. Fonseca that he was fantasizing about her.

40.   The Perpetrator was standing unreasonably and uncomfortably close to Ms. Fonseca when he told her this.

41.   When Ms. Fonseca did not respond to the Perpetrator, he walked over to the hot tub and continued staring at Ms. Fonseca.

42.   The Perpetrator and Ms. Fonseca were within the view of Ms. Roney, but Ms. Roney did nothing to protect Ms. Fonseca from or otherwise intervene in this interaction.

43.   Ms. Fonseca again blew her whistle twice to alert Ms. Roney that she needed her assistance.

44.   In response, Ms. Roney and a male co-worker, Torin Anderson, come over to speak with Ms. Fonseca.

45.   Ms. Fonseca relayed her interaction with the Perpetrator to Ms. Roney and Mr. Anderson.

46.   Ms. Roney failed to provide any meaningful resolution to the issue or other ways to keep Ms. Fonseca safe.

47.   Ms. Roney's and Mr. Anderson's only response was to offer to stay with Ms. Fonseca for a few minutes until the next rotation.

48.   Shortly after the next and final rotation, Ms. Roney asked Ms. Fonseca to start the pool closing duties, which she did.

49.   At this time, the Aquatic Supervisors, Ms. Smits and Ms. Eckern, were absent from the property, having gone home around 8:00 P.M.

50.   It was Ms. Smits' and Ms. Eckern's usual practice to leave the Rec Center at approximately 8:00 P.M instead of staying until the pool closed.

51.   As Ms. Fonseca was gathering life jackets and trash from the deck, she noticed the Perpetrator staring at her from behind the glass wall in the family locker room.

52.     After the pool closed, Ms. Fonseca exited the Rec Center alone.

53.      Neither Ms. Roney nor any other City employee provided Ms. Fonseca with any safety while performing her closing duties or leaving after the pool closed.

54.     As Ms. Fonseca walked toward her car, she noticed a man walking towards her in the parking lot and calling her name.

55.     There was no significant lighting in the parking area, so it was very dark, and Ms. Fonseca could only see the color of his shirt.

56.     The Man was wearing a blue Rec Center shirt from the City, so Ms. Fonseca assumed he was just another city employee.

57.     When the man got close enough, Ms. Fonseca realized that the man was the Perpetrator.

58.     Ms. Fonseca was still alone and vulnerable without any protection from the City.

59.     Ms. Fonseca attempted to leave, but the Perpetrator was standing in between Ms. Fonseca and her car.

60.     The Perpetrator touched Ms. Fonseca as she attempted to move past him to her car.

61.     She pulled away from the Perpetrator and attempted to enter her vehicle.

62.     While she was seated in the driver's seat attempting to start her vehicle, the Perpetrator forced his way into Ms. Fonseca's car, shutting the door behind him.

63.     Ms. Fonseca grabbed her door handle and tried to escape her vehicle and get help, but the Perpetrator grabbed her arm and forcefully pulled her back into the car.

64.     The Perpetrator then climbed into the back seat.

65.     Ms. Fonseca again tried to escape her vehicle and get help.

66.     When she grabbed her door handle the Perpetrator reached over and grabbed her hair and pulled her backwards, prohibiting her from leaving the vehicle.

67.     The Perpetrator forcefully demanded that Ms. Fonseca get into the back seat of her vehicle, where he proceeded to rape and assault Ms. Fonseca.

68.     When Ms. Fonseca later attempted to investigate the identity of the Perpetrator, she was told the City did not have any surveillance footage of the parking lot where the assault occurred.

## COUNT ONE:
## EMPLOYMENT DISCRIMINATION – SEXUAL HARASSMENT

69.     Plaintiff realleges and incorporates by reference all previous allegations of this Complaint as if set forth explicitly herein.

70.     Plaintiff has the right to work in an environment that is free from sexual harassment or hostility.

71.     The City owes Plaintiff a duty to protect her from sexual harassment and hostility in the workplace.

72.     The City owes Plaintiff a duty to mitigate or resolve a sexually hostile work environment.

73.     Ms. Fonseca was subjected to unwanted verbal and physical conduct of a sexual nature while she was working for the City on City property.

74.     Ms. Fonseca repeatedly reported this unwanted sexual conduct to other employees and her supervisor while it was happening.

75.     The City knew or should have known of the sexual harassment, conduct, and hostility.

76.     The City failed to take prompt, remedial action to stop the sexual harassment and hostility.

77.     The City's failure directly led to Ms. Fonseca being raped and assaulted on City property.

78.     As a result of the City's failures, Ms. Fonseca suffered serious bodily injury and emotional distress.

79.     As a result of the City's failures, Ms. Fonseca suffered economic and non-economic damages in an amount to be determined at trial.

## COUNT TWO:
## NEGLIGENCE

80.     Plaintiff realleges and incorporates by reference all previous allegations of this Complaint as if set forth explicitly herein.

81.     The City owed Ms. Fonseca a duty of care to keep her reasonably safe while she was on the property and on duty as a lifeguard.

82.     The City owed Ms. Fonseca a duty to act in a reasonably prudent manner to avoid the risk of reasonably foreseeable injury to employees like Ms. Fonseca.

83.     The City violated its duty to Ms. Fonseca by failing to keep her reasonably safe, including but not limited to:

      a.   Failing to adequately staff the Rec Center pool to maintain safety and visibility for Ms. Fonseca;

      b.   Failing to have supervisors on-duty who could adequately protect Ms. Fonseca;

      c.   Failing to train staffed supervisors regarding sexual harassment and safety precautions;

    d.  Failing to adequately respond to Ms. Fonseca's complaints of sexual harassment at work;

    e.  Failing to provide adequate lighting and camera surveillance to protect its employees.

84.  As a result of the City's failures, Ms. Fonseca was raped and assaulted.

85.  As a result of the City's failures, Ms. Fonseca suffered serious bodily injury and emotional distress.

86.  As a result of the City's failures, Ms. Fonseca suffered economic and non-economic damages in an amount to be determined at trial.

**COUNT THREE:**
**NEGLIGENT HIRING AND SUPERVISION**

87.  Plaintiff realleges and incorporates by reference all previous allegations of this Complaint as if set forth explicitly herein.

88.  The City owed a duty to Ms. Fonseca as an employee to ensure that her supervisors and management were equipped with the knowledge, training, and experience necessary to protect her from harassing, predatory, and dangerous customers.

89.  The City knew or should have known that Ms. Fonseca's supervisors and management were not adequately equipped with the knowledge, training, and experience necessary to protect her from harassing, predatory, and dangerous customers.

90.  Ms. Fonseca's supervisors and management failed to provide any reasonable protection or safety measures to protect Ms. Fonseca from harassing, predatory, and dangerous customers despite her repeated requests.

91.     The City knew or should have known that this failure posed a foreseeable risk of harm to Ms. Fonseca.

92.     The failure of Ms. Fonseca's supervisors and management caused Ms. Fonseca significant harm because the failure resulted in her being raped and assaulted.

93.     As a result, the City's failure to properly train and supervise Ms. Fonseca's supervisors and management proximately cause the harm alleged of herein.

94.     As a result of the City's failures, Ms. Fonseca suffered serious bodily injury and emotional distress.

95.     As a result of the City's failures, Ms. Fonseca suffered economic and non-economic damages in an amount to be determined at trial.

## COUNT FOUR:
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

96.     Plaintiff realleges and incorporates by reference all previous allegations of this Complaint as if set forth explicitly herein.

97.     The City owed a duty to Ms. Fonseca as an employee to keep her reasonably safe while she performed her duties for the City.

98.     The City engaged in conduct, as described herein, that it should have realized involved an unreasonable risk of causing emotional distress to Ms. Fonseca.

99.     The City knew or should have known that its conduct could cause the sort of emotional distress that might result in illness or bodily harm.

100.    The City conduct unintentionally caused Conlin to sustain severe emotional distress, characterized by illness or bodily harm.

101.    As a result of the City's failures, Ms. Fonseca suffered serious bodily injury and emotional distress.

102.    As a result of the City's failures, Ms. Fonseca suffered economic and non-economic damages in an amount to be determined at trial.

WHEREFORE, Plaintiff requests that this Court grant the following relief in Plaintiff's favor, and against Defendants as follows:

1.    For special damages in an amount to be determined and as established by proof;

2.    For general damages in an amount to be determined and as established by proof;

3.    For interest on damages as permitted by law;

4.    For attorneys' fees and costs as permitted by law;

5.    For such other and further relief as the Court deems just and equitable.

### JURY DEMAND

Plaintiff hereby demands trial by jury.

DATED this 27th day of December, 2021.

STEELE ADAMS HOSMAN

*/s/ Erika M. Larsen*
Justin M. Hosman
Erika M. Larsen
Alyssa J. Wood
*Attorneys for Plaintiffs*